IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL CARSON,

                Plaintiff,

                                        CV 06-965-ST

      v.

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                           Defendant.

                                        FINDINGS AND
                                        RECOMMENDATION

STEWART, Magistrate Judge:

## **INTRODUCTION**

      Plaintiff, Michael Carson, brings this action for judicial review of a final decision of the

Commissioner of Social Security denying his application for disability insurance benefits

("DIB") under Title II of the Social Security Act. The court has jurisdiction under 42 USC

§ 405(g). The Commissioner concedes that his decision contains errors and moves the court to

remand for further proceedings. The Commissioner's motion to remand for further proceedings

should be granted.

## BACKGROUND

Carson was born in 1965.  Tr.  71.[1]  He graduated from high school and received

vocational training while in the military.  Tr.  89, 94.  Carson served in the military from 1984 to

1996 as a mechanic and has an FAA Airframe and Power Plant license.  Tr.  94, 129.  After

leaving the military, he worked as a mechanic for two years and then began work in 1998 for the

US Postal Service  ("USPS") as a mail processor.  Tr.  126.  In 1999 Carson developed

deQuervain's tenosynovitis,[2] was put on light duty and quit work at the USPS on

December 8, 2000.  Tr. 73, 126, 558.  However, he returned to work at the USPS in 2001 and

worked at some level until late 2002.  *Id.*

Carson alleges disability from December 8, 2000, due to stress, memory and

concentration problems, fibromyalgia, bilateral tenosynovitis, tinnitus, extreme fatigue,

patellofemoral pain in both knees, chronic lumbosacral strain, neck pain, hemorrhoids and

shoulder pain.  Tr. 73, 88.  He filed for DIB on April 22, 2002, and his application was denied

initially and on reconsideration.  Tr. 47-48, 71-74.  A hearing was held before an Administrative

Law Judge ("ALJ") on October 8, 2004.  Tr. 549-77.  The ALJ found that Carson satisfied the

insured status requirements for a claim under Title II through March 16, 2004.  Tr. 32.  Thus,

Carson must establish that he was disabled on or before that date to prevail on his DIB claim.

42 USC § 423(a)(1)(A),  *Tidwell v. Apfel,* 161 F3d 599, 601 (9th Cir 1998).  The ALJ issued an

---

[1]  Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer (docket #5).

[2]  deQuervain's tenosynovitis is an inflammation of the tendons along the side of the wrist and thumb.  *Stedman's Medical Dictionary* 406 (5th ed. 1982).

opinion on March 16, 2004, finding Carson not disabled which is the final decision of the

Commissioner.  Tr. 15-33.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability.  *Roberts v.*

*Shalala*, 66 F3d 179, 182 (9th Cir 1995).  To meet this burden, a claimant must demonstrate an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected . . . to last for a continuous period of not

less than 12 months."  42 USC § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether

a person is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 US 137, 140 (1987);

20 CFR § 404.1520.  At step one, the claimant is not disabled if the Commissioner determines

that the claimant is engaged in substantial gainful activity ("SGA").  *Bowen,* 482 US at 140;

20 CFR § 404.1520(b).

At step two, the Commissioner determines whether the claimant has a medically severe

impairment or combination of impairments.  An impairment is severe if it significantly limits the

claimant's ability to perform basic work activities.  20 CFR § 404.1521.  Basic work activities

are the abilities and aptitudes necessary to do most jobs.  *Id.*  The burden to show a medically

determinable severe impairment is on the claimant.  *Bowen,* 482 US at 146.

At step three, the claimant is found disabled if the his impairments meet the duration

requirement and meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity."  *Id* at 141; 20 CFR

§ 404.1520(d).  The criteria for these listed impairments are enumerated in 20 CFR Pt. 404, subpt. P, app. 1 (listing).

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments.  20 CFR § 404.1545(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184.

At step four, the Commissioner must determine whether the claimant retains the RFC to perform work he has done in the past.  If the claimant retains the ability to perform his past work, then the analysis proceeds to step five.  20 CFR § 404.1520(f).

If the adjudication reaches step five, the Commissioner must determine whether the claimant can perform any work that exists in the national economy.  *Bowen,* 482 US at 142;  20 CFR § 404.1520(g).  Here the burden of production shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do.  *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999).  If the Commissioner meets this burden, then the claimant is not disabled.  20 CFR § 404.1566.

## THE ALJ's FINDINGS

At step one, the ALJ found Carson worked at SGA until October, 28, 2002, such that his disability would be determined beginning on that date.  Tr. 20.

At step two, the ALJ determined that Carson had severe impairments of deQuervain's tenosynovitis and "chronic pain syndrome with psychological and characterological traits," but that his mental impairments were not severe.  Tr.  21.

At step three, the ALJ found that Carson's impairments did not meet or medically equal the criteria for a listing.  Tr.  28.

The ALJ determined that Carson retained the RFC to perform light and sedentary work activity which does not require use of the hands and that has a sit/stand option.  Tr.  30.  A vocational expert ("VE") testified at the hearing regarding Carson's past relevant work.  Tr. 569-76.  At step four, the ALJ adopted the testimony of the VE that Carson could not perform his past relevant work.

The ALJ asked the VE whether there were other jobs in the national economy that an individual of Carson's age, experience, and RFC could perform.  The VE testified Carson had transferable skills to light jobs and to sedentary jobs as a dispatcher, front desk receptionist, and charge account clerk.  Tr. 570-72.   At step five, the ALJ found there were jobs in the national economy that Carson could perform and he was not disabled.  Tr.  32.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F3d 1190, 1193 (9th Cir 2004). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  *Edlund v. Massanari,* 253 F3d 1152, 1156 (9th Cir 2001) (citations omitted).  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  *Martinez v. Heckler*, 807 F.2d 771,772 (9th Cir 1986).  If the

evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson,* 359 F3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews,* 53 F3d at 1039-1040.

## FINDINGS

Carson asserts several errors by the ALJ which the Commissioner concedes. Those errors are: (1) finding that Carson earned SGA through October 28, 2002, without determining whether it was a subsidy or an unsuccessful work attempt; (2) failing to properly evaluate Carson's mental impairments; (3) improperly assessing lay testimony and the opinions of state agency consultants; and (4) not clearly articulating the exact weight given to Carson's rating of disability by the Department of Veterans' Affairs ("VA").

However, Carson also contends the ALJ erred by: (1) improperly assessing other medical opinions and Carson' testimony; (2) failing to include all of his limitations in the hypothetical question to the VE; and (3) failing to resolve the conflict between the VE testimony and the Dictionary of Occupational Titles.

Carson asserts there are no unresolved issues and that crediting certain testimony as true establishes his disability. The Commissioner disagrees and seeks a remand to address unresolved issues.

## I. **SGA Determination**

At step one, the ALJ found Carson had engaged in SGA at least through October, 28, 2002, based on his earnings in 2001 and 2002 and on conflicting evidence regarding the number of hours and days worked and when he stopped working. Tr. 19-20. The Commissioner

concedes that this finding was premature and seeks a remand for the ALJ to address whether Carson's work in 2001 and 2002 was an unsuccessful work attempt or subsidized work environment.  Carson contends that the record contains sufficient information to establish that he was not performing SGA.

As the ALJ noted, the record reveals that Carson's earnings were significantly above the SGA threshold in both 2001 and 2002.  However, the record also indicates that Carson had significant work restrictions pending his worker's compensation and disability claims from the USPS.  The medical notes from Dr. Williams indicate nonconsecutive periods of work that were full-time and periods of work that were less than two days a week.

To establish the amount of his SGA, Carson relies on the statement of Robert Moore, his USPS supervisor, indicating that he performed at about a 50% level.  Tr. 101-02.  Based on that performance level, Carson calculates that his work was worth half of what he was paid, resulting in SGA earnings less than the threshold monthly levels of $740 in 2001 and $780 in 2002.  However, Mr. Moore completed a questionnaire only for the time period March 10, 2001, to May 16, 2002, leaving gaps in the record from December 8, 2000, to March 10, 2001, and from May 16 to October 28, 2002.

In addition, several factors must be considered in determining whether the work was subsidized at a SGA level or whether all or part of the work was an unsuccessful work attempt under the guidelines in 20 CFR § 404.1574.  For example, work is subsidized "if the true value of [the] work, when compared with the same or similar work done by unimpaired persons, is less than the actual amount of earnings paid."  20 CFR § 404.1574(a)(2).  Mr. Moore's estimate of Carson's performance of light duty work is not necessarily the same as evidence as to the value

of "same or similar work done by unimpaired person."  In addition, an unsuccessful work attempt depends on the length of time worked (three months or less, three to six months, or more than six months), the "removal of special conditions" which took the impairment into account (if less than six months), and other factors such as frequent absences, unsatisfactory work, and temporary remission (if between three and six months).  20 CFR § 404.1574(c).  Accordingly, a remand is appropriate for the ALJ to determine whether Carson's earnings were subsidized and whether any of his work during this period was an unsuccessful work attempt.

## II.  Severe Impairments

Carson asserts the ALJ erred at step two of the sequential analysis by failing to find that his mental impairment and fibromyalgia were severe impairments.  An impairment is severe if it significantly limits the ability to do basic work activities.  These include physical functions, such as seeing, hearing, speaking, walking, standing and sitting, and mental functions, such as understanding, remembering, using judgment and responding appropriately to work situations.  20 CFR § 404.1521(b).

The ALJ found that Carson has severe impairments.  Tr. 28.  He then continued the sequential analysis to consider, as required by 20 CFR § 404.1523, the combined effect of all Carson's impairments, both severe and nonsevere.  Because step two "was resolved in [the claimant's] favor," any error made by the ALJ at step two is harmless.  *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F3d 1050, 1055 (9th Cir 2006), citing *Burch v. Barnhart*, 400 F3d 676, 682 (9th Cir 2005).  The issue is whether the ALJ properly determined the functional limitations imposed by all of Carson's impairments in the remaining steps of the analysis.

*///*

8 - FINDINGS AND RECOMMENDATION

### III.  <u>Listing of Impairments</u>

Carson asserts that the ALJ erred as step three by failing to find that Carson's mental impairments meet or equal a listing.  The mere fact that a condition has been acknowledged with a medical diagnosis in the listings does not in itself equate to a finding of disability.  *Key v. Heckler,* 754 F2d 1545, 1549-1050 (9th Cir 1985); *Young v. Sullivan,* 911 F2d 180, 183-184 (9th Cir 1990).  The listing criteria for mental impairments include ratings of the degree of limitation the impairments impose on the claimant in four broad categories of function, *viz.,* restriction of activities of daily living, difficulties in maintaining social functioning, deficiencies of concentration, persistence or pace, and episodes of decompensation of extended duration.  These are known as the "B" criteria.  If the claimant can show the requisite marked or extreme degree of limitation in these broad categories and the other criteria for a particular listing, then the claimant will be presumed to be disabled and it is unnecessary to make an RFC assessment.  20 CFR § 404.1520(a)(4)(iii).  For some impairments, the claimant could instead show limitations equal to the "C" criteria, which usually involves extended periods where the claimant is unable to live outside of a structured or supportive living environment.  20 CFR Pt. 404, supt. P, app. 1, 12.00.

Carson asserts that his functional limitations equal the "B" criteria for Affective Disorders, Anxiety Related Disorders, and Personality Disorders in the Listing of Impairments. 20 CFR Pt. 404, supt. P, app. 1, 12.04, 12.06, 12.08.  To decide otherwise, the ALJ adopted the opinion of Grant C. Rawlins, Ph.D., a consulting clinical psychologist for the state agency, who examined Carson in July 2002 and diagnosed Adjustment Disorder with Anxiety.  The ALJ stated:

Mental status showed that the claimant's interpersonal skills were good, and by self-reports his usual mood was "good." Regarding alleged memory and concentration difficulties, Dr. Rawlins felt that the difficulties described by the claimant would not significantly impair his work performance. His intellectual ability was in the average range; gross cognitive functioning was normal . . . he was oriented; immediate memory was adequate; short-term memory was unimpaired; he was able to perform serial 7's without error; and he demonstrated the ability to understand and carry out simple instructions. The claimant was alert and responsive, and reading, writing, and spelling were all intact. . . He was oriented, speech patterns were normal, and insights and judgment were unimpaired. The claimant reported that he had an adequate social life that consisted of various relatives and friends. Dr. Rawlins diagnosed an adjustment disorder with anxiety, and assigned the claimant a global assessment of functioning rating of 70, indicating that he had some "mild" symptoms, but that he was generally functioning quite well. In conclusion, Dr. Rawlins summarized that the claimant demonstrated some "mild" memory impairment and believed that this was likely related to the claimant's reported pain and the medications that he took to control such (the claimant's only current medication was Vicodin). He further indicated that there might be an element of a somatoform exacerbation of medical symptoms, but there was no indication that medication was warranted for possible anxiety (exhibit 3F). There is nothing in the evidence to support the claimant's allegations regarding a disabling mental impairment. His symptoms are mild and do not impose more than a minimal limitation upon his ability to function, are thus not severe.

Tr. 20-21.[3]

As the ALJ noted, this was the only comprehensive psychological report in the file. The ALJ also correctly noted that Carson's primary treatment for mental health problems was periodic antidepressant medication and participation in group therapy. Tr. 28.

Citing *Marcia v. Sullivan,* 900 F2d 172, 176 (9th Cir 1990), Carson nevertheless claims legal error because the ALJ failed to specifically identify whether his activities of daily living,

---

[3] The GAF is a scale from 1-100, in ten point increments, used by clinicians to determine the individual's overall functioning. A GAF of 61-70 indicates some mild symptoms (e.g., depressed mood or insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. The American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 34 (4th ed. 2000).

social functioning, concentration, persistence, or pace were limited.  "Medical equivalence will be found if the medical findings 'are at least equal in severity and duration to the listed findings.' Equivalence is determined on the basis of comparison between the 'symptoms, signs and laboratory findings' about the claimant's impairment as evidenced by the medical records with the medical criteria shown in the listed impairment."  *Id* at 175-76.  (citations omitted).

Carson, unlike the claimant in *Marcia*, did not provide any medical evidence supporting equivalence.  "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."  *Burch,* 400 F3d at 683.  Carson asserts his testimony and lay testimony is sufficient to establish the requisite degree of functional limitation.  However, general assertions by a claimant, absent supporting medical evidence, regarding functional limitations are not enough.  *Tackett,* 180 F3d at 1099-1100.  Carson has the burden of establishing that he meets or equals the criteria for a listed impairment based on medical evidence.  Here the only medical evidence regarding the degree of limitation as a result of Carson's mental impairment comes from Dr. Rawlins.  The ALJ committed no error at step three because Carson failed to present medical evidence to satisfy the equivalence requirement.

**IV.  RFC Determination**

**A.  Carson's Credibility**

The ALJ found Carson's "allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision."  Tr. 32.  Carson asserts the ALJ improperly rejected his testimony which should be credited as true.

The ALJ must assess the credibility of the claimant regarding the severity of symptoms only if the claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms. *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996). Carson has medically determinable impairments which could produce his symptoms. When there is an underlying impairment and no evidence of malingering, an ALJ may discredit a claimant's testimony regarding the severity of symptoms only by providing clear and convincing reasons based on specific findings. *Dodrill v. Shalala*, 12 F3d 915, 918 (9th Cir 1993).

Here the ALJ did not separately list the reasons for his credibility determination. However, reviewing the body of his decision, this court can easily discern the underlying reasons.

In assessing credibility, the ALJ may consider objective medical evidence and the claimant's treatment history, including the effectiveness of medications, aggravating factors, and any unexplained failure to seek treatment. *Smolen,* 80 F3d at 1284-1285. In that regard, the ALJ noted that: (1) Carson reported intense pain, but, during the same time frame, reported taking one Vicodin a day "at most" (Tr. 26); (2) despite ongoing problems with deQuervain's tenosynovitis, Caron refused to have surgery to correct it because he "could lose some function ability" (Tr. 28); (3) despite this wrist problem, Carson engaged in many activities outside of work that possibly aggravated the condition, including using a chain saw, car repair work, and other chores (Tr. 23, 25, 26, 29); (4) despite the recommendations from physicians regarding the "absolute importance" of exercise and physical therapy, Carson admitted to his physical therapist he practiced "very little" of his recommended exercise, postures and use of TENS unit (Tr. 24, 25, 492); (5) despite the recommendation of a "banding" procedure for treatment of Carson's

hemorrhoids, there was no record of the outpatient procedure being performed (Tr. 23);

(6) Carson's mental health treatment consisted only of periodic antidepressant medications and

group therapy (Tr. 27, 28); and (7) Carson quit attending an anger management group stating he

needed to stay home with his wife, yet continued with his pain management group meetings

(Tr. 27).

The ALJ may also consider the claimant's daily activities, work record, and the

observations of physicians and third parties with personal knowledge about the claimant's

functional limitations. *Thomas v. Barnhart,* 278 F3d 947, 958-959 (9th Cir 2000). In that regard,

the ALJ cited Dr. Williams' conclusion that Carson could probably work full time in his light

duty job as an information clerk at the USPS. Tr. 21, 29. A physician's opinion that a claimant

is able to work is a valid reason for rejecting claimant's excess pain testimony. *Moncada v.

Chater,* 60 F3d 521, 524 (9th Cir 1995). The ALJ also noted the inconsistencies in Carson's

physical capacities test and the examiners' note of Carson's poor effort in some areas of testing.

Tr. 25-26, 30. He further stated that Carson was able to take care of his pets, do some yard work,

work on his cars for 20 minutes at a time, use the computer, shop, complete some household

chores, and do self care. Tr. 25, 28, 29. The ability to perform daily household chores may

indicate an ability to work. *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995). However, a

disability claimant does not need to be "utterly incapacitated in order to be eligible for benefits."

*Fair v. Bowen,* 885 F2d 597, 603 (9th Cir 1989). Nevertheless, if the claimant's level and type of

activity is inconsistent with his claimed limitations, his activities do have a bearing on his

credibility. *Id.*

The ALJ may also employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Smolen,* 80 F3d at 1284; *see also* SSR 96-7p, 1996 WL 374186. The ALJ noted that Carson completed a medical questionnaire on September, 2001, on which he marked no impairments other than hemorrhoids. Tr. 23. He also noted that the examining rheumatologist found no trigger points and gave Carson some pamphlets to read about fibromyalgia, after which Carson reported additional symptoms and trigger point pain. Tr. 24.

Carson rejects the ALJ's inferences regarding his use of a chainsaw as there is no information in the record regarding the type of chainsaw or its weight and his conditions allow sporadic activity that is not inconsistent with his use of the chainsaw. Carson also argues that other inferences drawn by the ALJ are invalid reasons to reject his credibility. The ALJ noted that when Carson was working, his Finkelstein's test was only mildly positive, yet it was markedly positive after Carson stopped working. Tr. 29. The ALJ had previously noted Carson's activities outside of work may be aggravating his condition. Tr. 23. Carson asserts the positive Finkelstein's test is consistent with his condition worsening over time. Carson also contends that the ALJ should not have faulted his decision not to have surgery on his wrists as his condition was stable and chronic by 2003. However, the ALJ can draw reasonable inferences from the record. *Gallant v. Heckler*, 753 F2d 1450, 1453 (9th Cir1984). None of the inferences drawn by the ALJ are inherently unreasonable.

Finally, Carson asserts the ALJ erred in finding his symptoms inconsistent with objective findings because chronic fatigue and fibromyalgia symptoms are not supported by objective

evidence.  The ALJ did cite some symptoms that were inconsistent with the record, but that would be consistent with fibromyalgia and chronic fatigue.  However, the ALJ also cited other conditions and complaints, such as tinnitus and hearing problems, that were inconsistent with the objective record.

The ALJ's duty is to assess credibility and he did so based on substantial evidence in the record.  "When, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second guess that decision." *Fair,* 885 F2d at 604.  Even if not every reason cited by the ALJ for discounting credibility was correct, his decision contains other clear and convincing reasons for rejecting Carson's assertions regarding his inability to work.  Credibility evaluations cannot be not discounted for one incorrect reason.  *Batson,* 359 F3d at 1197.

## B.  Lay Witness Testimony

Carson asserts the ALJ failed to address the testimony submitted by his wife and by his USPS supervisor.  Friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition.  *Dodrill,* 12 F3d at 918-19.  Such testimony cannot be disregarded without comment.  *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996).  If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness.  *Id.*  The Commissioner concedes the ALJ erred and did not address this testimony.  Carson asserts the testimony should be credited as true and, as a result, he should be found disabled.

Carson's wife did not testify at the hearing, but completed the SSA form "Third Party Information on Activities of Daily Living and Socialization" on June 10, 2002.  Tr. 114-25.

15 - FINDINGS AND RECOMMENDATION

Mrs. Carson noted on the form that her husband works but is "harassed and feels like a burden at work." Tr. 124. She also noted he "has a lot of pain which makes him very uncomfortable at work." *Id.* Mrs. Carson indicated Carson performed activities of daily living such as self care, shopping, driving, pet care, home maintenance, meal preparation, watering, and occasional car repair. She also stated that he talked and socialized with others, used the internet, and could handle a checking account. In addition, he took naps three times a week for one to two hours, had trouble sleeping, was in pain, did house chores very slowly, and got drowsy from his medication.

Mrs. Carson's testimony, even if credited as true, does not establish disability. She indicated Carson was working, having pain at work, was drowsy and worked slowly. The ALJ found that Carson's impairments prevented him from performing his past work as a mail processor. The issue of whether Carson can do any other work is not resolved by Mrs. Carson's written testimony.

Robert Moore, Carson's supervisor at USPS, completed a SSA questionnaire for the state agency to determine if Carson's employment was subsidized or a trial work attempt. Tr. 75, 99-102. The questionnaire covered the time period of March 10, 2001, to May 16, 2002. Tr. 99. Mr. Moore stated that Carson was being paid full time but only came to work a few days a week. Tr. 101. He noted that a physician stated Carson was not capable of performing the job for which he was hired, that of a mail processor. *Id.* He added that Carson worked fewer hours with extra breaks and performed well below what other workers did. Tr. 101-02. The ALJ found Carson could not perform his past work as a mail processor, which is fully consistent with Mr. Moore's testimony. However, even crediting Mr. Moore's testimony as true does not establish

disability because it does not address whether Carson could adequately perform other work.  It is noteworthy that Carson apparently was able to work full-time for some unknown period of time in 2001 as a duty clerk in the USPS information office.  Tr. 227, 231.

A remand for further proceedings is appropriate to correct the ALJ errors in not assessing the lay testimony.

### C.  Physicians' Opinions

Carson asserts the ALJ improperly rejected the opinions of his treating physician, Richard Williams, M.D., and the state agency physicians who limited him to lifting only ten pounds.  The Commissioner concedes the ALJ did not address the opinions of the state agency physicians.  Linda Jensen, M.D., a state agency physician, determined in June 2002 that Carson could occasionally and frequently lift ten pounds;[4] stand, walk or sit for six hours; and had limitations on grasping and handling.  Tr. 341-42.  Hugh J. MacMahon, M.D., a state agency physician, recommended in August 2002 that an orthopedic consultant review the case and comment on Carson's RFC.  Tr. 213.  William Barnhard, M.D., reviewed and agreed with Dr. MacMahon's RFC.  Tr. 215-16.

Dr. Williams wrote in January 2001:  "At this time, [Carson] feels that he can only do real light duty, with answering phones, doing labeling and that sort of thing.  He cannot do any lifting over 10 pounds because that causes significant exacerbation of his deQuervain's tenosynovitis."  Tr. 237.  The ALJ discussed Dr. Williams' treatment of Carson but did not address the lifting restrictions of either the state agency physicians or Dr. Williams in

---

[4]A light exertional level of work is defined as lifting twenty pounds occasionally and ten pounds frequently.  A sedentary level is lifting ten pounds occasionally, and less than ten pounds frequently.  This RFC is slightly more than sedentary, as it describes being able to lift ten pounds frequently.  20 CFR § 404. 1567.

determining Carson's RFC.  The ALJ determined Carson's RFC was "light and sedentary" work, with a sit/stand option and no repetitive use of the hands.  Although some of the jobs proposed by the VE that Carson could do, given his RFC, were sedentary jobs, the ALJ did not properly address the physicians' opinions regarding Carson's ability to lift more than ten pounds.

Carson further contends the ALJ improperly rejected the diagnosis of fibromyalgia by Stephen M. Campbell, M.D., a rheumatologist at the Portland VAMC who examined Carson in April 2002.  Social Security regulations specify that the most weight is given to the opinions of treating physicians, followed by examining physicians, and the least amount of weight is given to nonexamining experts.  *Holohan v. Massanari*, 246 F3d 1195, 1201-1202 (9th Cir 2001).  Dr. Campbell was an examining physician.  The ALJ can reject an examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995).  An uncontradicted opinion may be rejected for clear and convincing reasons.  *Thomas,* 278 F3d at 956-957.  In addition, the ALJ is not required to accept any physician's opinion that is "brief, conclusory, and inadequately supported by clinical findings."  *Id.* at 957.

The ALJ discussed Dr. Campbell's opinion at length, noting that his findings regarding Carson's condition were mostly normal.  Tr.  27.  He specifically noted that Dr. Campbell found no evidence of synovitis and no fibromyalgia trigger points.  Tr.  24.  The ALJ also pointed out that Dr. Campbell found Carson had nonrestorative sleep despite " the vagueness of the claimant's reported symptoms and the limited medical records for review."  *Id.*  The ALJ further

stated that Carson called Dr. Campbell after the examination and after receiving pamphlets on fibromyalgia to report he had failed to mention some pressure points and other symptoms.  *Id.*

Finally, the ALJ also noted Dr. Campbell's assessment was a "one-time" examination based on "claimant's complaints."  Tr.  27, 29.  The ALJ found Carson not entirely credible as discussed above.  The ALJ also found that Dr. Campbell's diagnosis was based largely on Carson's complaints.  The ALJ may reject a physician's opinion that is based on claimant's subjective complaints which have properly been discounted.  *Fair,* 885 F2d at 605.  The ALJ also noted that Dr. Campbell was unsure of the diagnosis and had few medical records to review. As Dr. Campbell stated:

> I am not sure what this patient has.  I suspect that what he has is a variant of fibromyalgia. . . I see nothing to make me worry that he has an underlying muscle or neurological disease.  His history of his pain sounds very much like fibromyalgia; the only really missing factor is a change with weather change.  He clearly has some kind of sleep disturbance; although he is not describing the classic sleep disturbance of fibromyalgia, the overall tenor of his sleep is more compatible with fibromyalgia than anything else.  He may also be describing restless leg syndrome, and perhaps also periodic limb movements of sleep.
> In fact, the only atypical feature from fibromyalgia is the absence of tender points; however, this clearly occurs in perhaps 10% or more of patients.
> Thus I think his most likely diagnosis is fibromyalgia.

Tr.  369-70.

These are all clear and convincing reasons supported by the record for rejecting Dr. Campbell's diagnosis.  Furthermore, both Dr. Jensen and Dr. MacMahon noted a lack of medical evidence in the record to support a diagnosis of fibromyalgia.  Tr. 345 (June 2002); Tr. 213 (August 2002).

19 - FINDINGS AND RECOMMENDATION

Even if Dr. Campbell's diagnosis of fibromyalgia is correct, Dr. Campbell recommended minimal treatment (a pain management program, an exercise program and medication) and did not opine that Carson was disabled from fibromyalgia. Tr. 370. Instead, he surmised that Carson "may go on to develop chronic pain syndrome." Tr. 371. The ALJ found that Carson had chronic pain syndrome and functional limitations that were included in his RFC.

Thus, the ALJ did not err by rejecting Dr. Campbell's diagnosis.

**D.  VA Determination of Disability**

Carson asserts the ALJ failed to properly address the VA determination of disability. On January 13, 2004, the VA determined that Carson had a rating of 100% disability effective October 28, 2003, due to chronic fatigue with depression and non-restorative sleep secondary to the service-connected disability of fibromyalgia. Tr. 174-77. The ALJ discussed the VA rating and noted that Carson was awarded a 10% disability rating due to hemorrhoids in November 2000 and a 50% disability rating in 2002, apparently based on Dr. Campbell's diagnosis of a variant of fibromyalgia. Tr. 22, 25. Regarding the 100% disability rating, the ALJ stated:

> It is unclear how this disability rating conclusion was reached. Although the claimant was attending an aftercare pain management group, he was not receiving counseling or undergoing any mental health treatment other than periodic Prozac or Wellbutrin. He had received a remote diagnosis of an adjustment disorder when he was having significant difficulties at the post office, and the record mentions anxiety related to financial concerns, but there is nothing in the record that points to a disabling mental impairment. The claimant was diagnosed with an "atypical" fibromyalgia, absent any positive trigger point findings. The undersigned was unable to identify any diagnosis of chronic fatigue in the record. Although Dr. Campbell assessed that the claimant had non-restorative sleep, this was based on the claimant's self-reported sleep difficulties. No sleep study had been conducted, nor was there any other corroborating evidence to support this. Dr. Campbell saw the claimant for a one-time only

> rheumatology examination, at which time nearly all findings were
> normal, as fully addressed above.

Tr.  27 (footnote omitted).

The ALJ also stated:  "While the VA may have determined that he meets their requirements for disability, the Social Security Administration is bound by the Law and Regulations as set forth by Congress."  Tr.  29.

An ALJ must give great weight to the VA disability finding unless providing specific reasons supported by the record.  *McCartey v. Massanari,* 298 F3d 1072, 1076 (9th Cir 2002).  Although the ALJ discusses his disagreement with the VA determination, the Commissioner concedes the ALJ did not properly identify what weight he gave to the VA determination.  Based on the reasons given by the ALJ for questioning the VA disability finding, it is not appropriate, as argued by Carson, to give it great weight at this juncture.  Instead, a remand for further proceedings is appropriate for the ALJ to correct this conceded error.

## V.  **Step Five Determination**

Carson asserts the ALJ erred in determining his ability to do other work in the national economy.  He asserts the hypothetical question posed to the VE did not contain all of his limitations.  Carson also asserts the VE's testimony was inconsistent with the Dictionary of Occupational Titles, contrary to the applicable regulations and law.  These issues do not need to be addressed now.  A remand of this case for further proceedings may result in a changed RFC and, thus, a different vocational evaluation.

## VI.  **Remand**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir), *cert*

*denied*, 531 US 1038 (2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision.  *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir 1989).

Improperly rejected evidence should be credited and an immediate award of benefits directed where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman,* 211 F3d at 1178, (citations omitted).

As discussed above, there are unresolved issues as a result of the ALJ's errors.  This court agrees with the Commissioner that it is not clear from the record that the ALJ would be required to find Carson disabled even if evidence incorrectly assessed were credited.  Accordingly, a remand for further proceedings to correct the conceded errors is appropriate.

## RECOMMENDATION

For the reasons set forth above, the Commissioner's final decision should be reversed and remanded for further proceedings consistent with these findings.  A final judgment should be entered pursuant to sentence four of 42 USC § 405(g).

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due July 9, 2007.  If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 21st day of June, 2007.


/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge